**AMERICAN PNEUMATICS CO., et al.,**

v.

**Byron DONZIS, Appellee.**

No. B3034.

Court of Appeals of Texas,
Houston (14th Dist.).

June 24, 1982.

Eliot Shavin, Houston, for appellants.

Kenneth E. Kuffner, Clarence E. Eriksen, Arnold, White & Durkee, Houston, for appellee.

Before PAUL PRESSLER, MURPHY and SAM ROBERTSON, JJ.

MURPHY, Justice.

Appellants bring their appeal from the trial court's order denying their application for a temporary injunction to enjoin Byron Donzis (appellee) from divulging and misappropriating confidential proprietary information in violation of partnership and consulting agreements executed between the parties in 1978. Appellants, American Pneumatics Co. (the Partnership), J.S. Oshman & Co. (Oshman), and Alvin Lubetkin (Lubetkin) assert the evidence established as a matter of law the existence of a legally protected partnership interest in the information at issue, appellee's misappropriation of that information, and the dearth of an adequate remedy at law thereby rendering the trial court's denial of their application for a temporary injunction an abuse of discretion. We affirm.

The complicated relations between the parties require a thorough enumeration of the facts as revealed in the record. Appellee and Oshman formed the Partnership on September 22, 1978, executing three documents including a partnership agreement, an assignment and agreement, and a consulting agreement which purportedly set forth the rights and duties of the partners as well as the partnership terms and grounds for dissolution. Lubetkin was to serve as general manager. Appellee's capital contribution to the partnership consisted of the assignment of all proprietary infor-

mation pertaining to the invention of a "self-contained fluid pressure foot support device." In consideration for executing the above assignment, appellee received a $20,000 loan from the partnership, a 49% interest in the partnership, and "an exclusive license for the use of proprietary rights in the field of prescription applications" of his invention. The consulting agreement provided for a term of one year from September 22, 1978 and engaged appellee as a consultant in the development, refinement and marketing of the fluid pressure shoe insert and "in new areas designated by the General Manager," i.e., Lubetkin. During the latter part of 1978, appellee, having discovered problems with the fluid or "bladder-type" insert, disclosed the concept and assigned the patent application of a variable air pressure insert to the partnership. Appellee's development of this concept preceded the inception of the partnership. During 1978 and 1979, appellee tendered numerous invention submission forms to Lubetkin pursuant to the consulting agreement. According to testimony by both Lubetkin and appellee, however, Lubetkin directed appellee to concentrate his efforts upon developing inflatable shoe inserts. In late 1979, appellee obtained a license from Goodyear Aerospace in Ohio, the patent holder, to develop protective equipment utilizing a core composed of reticulated foam while still acting as a consultant to the Partnership and to which he charged his travel expenses. In December, 1979, appellee and the Partnership entered into an agreement with the National Football League (NFL) to develop inflatable and padded protective football equipment and agreed to pay the NFL royalties in the event they developed and/or sold such equipment using NFL funds. By letter dated August 21, 1980, appellee notified the Partnership of his election to terminate the consulting agreement. The Partnership responded on August 25, 1980, indicating appellee had no such power of election and stating the relationship would continue until such time as the Partnership elected to terminate as provided in the consulting and partnership agreements. In November, 1980, appellee

filed suit seeking a declaratory judgment upholding the validity of his termination of the consulting agreement, to which appellants answered and filed their counterclaim seeking the injunction which is the basis of this appeal. Meanwhile, in July, 1981, appellee entered into a business relationship with Cenikor, a drug rehabilitation program, through which Cenikor manufactured and sold protective equipment padded with foam rubber. The patents for this type of equipment, according to the record, had been issued from 1935 to 1970. Appellee also conducted business during 1981 with Houston Pneumatics Co., an appellee-controlled corporation, Med-Aire, Incorporated, a corporation of which appellee possessed majority control and RFM Developments, Limited, all of which concerns sold either foam-filled and/or inflatable protective equipment. The Partnership received no share of the sales receipts from these sales nor have either appellee or the Partnership paid the NFL any royalties pursuant to their agreement. Upon discovering dangerous flaws in variable pressure devices, appellee warned the Partnership and these devices were removed from the market. At the present time neither the Partnership nor Oshman hold assets or otherwise conduct business. At the November 17, 1981 hearing on appellee's suit and appellants' counter-claim, the trial court denied appellants' application for a temporary injunction.

■ Appellants' first and second points of error maintain the trial court's denial of their application for a temporary injunction was an abuse of discretion. The standard of review applicable where a trial court has denied a temporary injunction requires this court to view the evidence in the light most favorable to the trial court's ruling. *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978). Only where the record demonstrates a clear abuse of discretion may this court conclude the trial court erred. *Id.* Their points of error assert the trial court erred because the evidence established the Partnership had a legally protected interest in confidential information which appellee had misappropriated as a matter of law.

The record reveals conflicting evidence. The partnership agreement states the purpose of the Partnership was to own and develop certain "proprietary information" in regard to the invention described in exhibit A, i.e., an invention in "a self-contained fluid pressure foot support device." In addition, the partnership sought to develop new inventions, to license others to use the above information and inventions and to improve that information and those inventions. As defined in the assignment and agreement referred to in the partnership contract, the "proprietary information" owned by the Partnership by virtue of the agreements executed by the parties included the above-described invention, inventions described in any past, present and future patents to be filed by or granted to appellee concerning the cushioned bladder insert, and any "substitutions for ... and divisions, continuations, continuations in part, renewals, reissues, extensions ... and the like" concerning the cushioned bladder and any pertinent patents. The agreement comprehended patent application numbers 774,276; 842,250 and continuation-in-part number 928,425 group unit 353, all of which pertain to the cushioned bladder invention described above. Also included were all technology and "know-how" related to the above described invention and applicable patents and "like protection whether patentable or unpatentable, confidential or non-confidential including but not limited to designs (structural and/or non-structural), prototypes, materials, compositions of matter, methods of manufacturing and assembling, engineering technology, drawings, prints and the like.."

The consulting agreement executed on September 28th detailed appellee's duties as a consultant in regard to developing and refining the cushioned bladder invention and, in paragraph five, further provided that appellee agreed to assign to the Partnership "all inventions and improvements conceived, developed or reduced to practice" during the term of the consulting agreement. This duty included any new and improved "compositions of matter, apparatuses, articles of manufacture, methods of production and methods of doing business."

The testimony of the parties at the hearing differed greatly. Their perceptions in regard to appellee's role as a consultant conflicted. In addition, the parties differed as to whether new inventions and improvements only pertained to the use of the cushioned bladder construction or included other distinct materials as well.

 The role of the appellate court in reviewing the denial of a temporary injunction is limited to determining whether an abuse of discretion occurred, and it cannot substitute its judgment for that of the trial court. *Davis v. Huey*, 571 S.W.2d at 862. No abuse of discretion exists where the trial court bases its decision upon conflicting evidence. *Id.* In view of the conflicting evidence before this court, we find no abuse of discretion in the trial court's denial of appellants' application for a temporary injunction and, accordingly, we affirm the judgment of the trial court.

Affirmed.